Lt. James E. "Eddie" Adamson Special Operations Commander Forrest City Police Department 225 North Rosser Street Forrest City, AR 72335
Dear Lt. Adamson:
You have requested my approval, pursuant to the Interlocal Cooperation Act, A.C.A. §§ 25-20-101 through -108 (Repl. 2002 
Supp. 2005) (the "Act"), of a document captioned "Law Enforcement Assistance Compact" (the "Compact") between or among various yet-to-be-determined jurisdictions within the First Judicial District. The Compact anticipates that various law enforcement agencies and emergency services providers in the First Judicial District will participate but does not name any particular entities as parties. The Compact recites its purpose as follows:
 The purpose of this compact is to provide for mutual assistance between the parties entering into this compact in managing any emergency, disaster, or incident that affects any party, whether arising from natural disaster, technological hazard, man-made disaster, civil emergency, resource shortages, community disorders, insurgency, enemy attack, or to assist with special events or situations that may arise in the normal course of operations but would tax the finite resources of a party.
 This compact shall also provide for mutual cooperation in emergency-related exercises, testing, or other training activities using equipment and personnel simulating performance of any aspect of the giving and receiving of aid by parties during emergencies, such actions occurring outside actual declared emergency periods.
I am struck by the liberality of the legislature's statement of purpose in the Act:
 It is the purpose of this chapter to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.
A.C.A. § 25-20-102. I believe the arrangement described in my opening paragraph indeed qualifies as a joint enterprise of the sort just described, rendering the Compact subject to the formal and substantive requirements of the Act.
You are seeking approval of this proposed agreement pursuant to A.C.A. § 25-20-104(f), which provides that I must review any interlocal agreement to determine both whether it is in proper form and whether it is otherwise compatible with state law. One issue in conducting such a review is whether the proposed parties to the agreement are what the statute characterizes as "public agencies." Section 25-20-103 of the Code defines the term "public agency" as follows:
As used in this chapter:
(1) "Public agency" means any:
(A) School district;
(B) Political subdivision of this state;
 (C) Agency of the state government or of the United States;
(D) Political subdivision of another state;
 (E) Water district created under the provisions of the Regional Water Distribution Act, § 14-116-101 et seq.;
 (F) Governing body of a municipal electric utility as defined in § 25-20-402; and
 (G) Fire department organized under the laws of this state if the fire department:
 (i) Offers fire protection services to unincorporated areas; and
 (ii) Has received approval by its quorum court for participation in an interlocal cooperation agreement[.]
Assuming the projected parties are indeed law enforcement agencies, as the caption of the Compact suggests, in my estimation, they would qualify as "public agencies" under this definition. However, the text of the Compact anticipates interlocal cooperation in matters other than just law enforcement. Without knowing precisely who would participate in the Compact, I cannot definitively opine whether the "public agencies" requirement has been met.
Subsection 25-20-104 of the Act provides in pertinent part:
 (c) Any agreement for joint or cooperative action shall specify the following:
(1) Its duration;
 (2) The precise organization, composition, and nature of any separate legal or administrative entity created thereby, together with the powers delegated to it, provided that the entity may be legally created;
(3) Its purposes;
 (4) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor;
 (5) The permissible methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon the partial or complete termination; and
(6) Any other necessary and proper matters.
 (d) In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, in addition to the items enumerated in subdivisions (c)(1) and (c)(3)-(6) of this section, the agreement shall contain the following:
 (1) Provisions for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public agencies party to the agreement shall be represented; and
 (2) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking.
Having reviewed the Compact, I have concluded that it fails to meet two of the formal requirements set forth above. First, although it does provide for participating jurisdictions to withdraw from the Compact, it fails directly to address the issue of the Compact's duration. Secondly, it establishes neither a separate legal entity, an administrator nor a joint board responsible for administering the joint or cooperative undertaking. Article III does at various points refer to the "authorized representatives" of the various participating entities. However, it does not appear that these individuals are intended to comprise a "joint board" as that term is used in the Act, and the Compact contains no provision for an "administrator." Although I consequently cannot certify the Compact as submitted, should you correct these deficiencies and resubmit your request, I would be inclined to certify the Compact as formally in compliance with the Act, subject only to the above referenced proviso that the signatories must qualify as "public agencies."
I must note several substantive matters that could become points of concern. Under the terms of the Compact, police officers of all the participating political subdivisions are granted the authority under specified circumstances to make arrests in each others' jurisdictions. However, state law affords such authority only to certified law enforcement officers. A.C.A. §16-81-106(b). Although I assume all permanent law enforcement officers employed by the political subdivisions at issue are certified pursuant to A.C.A. § 12-9-106, the agreement should not be read as granting out-of-jurisdiction arrest authority to uncertified probationary officers. Secondly, A.C.A. §§16-81-106(c)(3) and -106(c)(4) provide that a law enforcement officer may make such an arrest outside his jurisdiction only at the request of the municipal or county law enforcement officer having jurisdiction and only then if the arresting officer's employer has a written policy on file "regulating the actions of its employees relevant to law enforcement activities outside its jurisdiction." In my opinion, each of the law-enforcement parties to the Compact would need to comply with these conditions.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh